IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES, | NO. CR-07-00373 RMW |
| Plaintiff, | ORDER RE TESTIMONY RELATING TO COMMUNICATIONS OF COUNSEL FOR CIGARETTES CHEAPER! |
| v. | |
| NED ROSCOE and JOHN ROSCOE, | **[Re Docket Nos. 169, 258]** |
| Defendants. | |

This order concerns whether the government may offer evidence of certain communications between former counsel for Cigarettes Cheaper! and the company.[1] The court has reconsidered its order of January 6, 2011 on the question. The court finds that the attorney-client privilege was

---

[1] The court gave the parties a copy of a draft of this order on January 27, 2011 and advised that it had not been proof read and the order that would actually be filed might contain some corrections as to form. This final order does contain some non-substantive corrections but also includes some corrections to the draft order's recital of Agent Gunderson's testimony and the parties' contentions. It also includes the court's request for briefing on the scope of the waiver as discussed at a hearing on January 28, 2011.

ORDER RE TESTIMONY RELATING TO COMMUNICATIONS OF COUNSEL FOR CIGARETTES CHEAPER!
NO. CR-07-00373 RMW

waived by voluntary disclosure of the subject on which the testimony is sought.

**Procedural History**

On November 21, 2003, officers of Cigarettes Cheaper!, President John Roscoe, Vice-President Ned Roscoe[2], CFO Robert Mazur and apparently Mark Baldwin[3] met with attorneys Thomas Willoughby and Steven Cramer[4] regarding a restatement of inventory to Comerica Bank. The government seeks to elicit the testimony of Mr. Mazur, Mr. Willoughby, and Mr. Cramer regarding what was said during the November 21, 2003 meeting and before the meeting with Comerica Bank on November 24, 2003 and to introduce as evidence Ned Roscoe's diary entries and notes reflecting statements made by the attorneys during the November 21 meeting. The government also apparently will offer additional documents produced pursuant to trial subpoenas issued to one or more of these witnesses.

On July 27, 2010 the government gave notice of its intent to offer the evidence relating to the communications. Defendants[5] objected to any use of the communications by the government contending that the communications were privileged both by their personal attorney-client privileges and by the corporate attorney-client privilege. John Roscoe's objection specifically stated that "CC remains a corporation registered with the California Secretary of State. Two of its officers are the defendants in this case. They are entitled to assert the attorney-client privilege and do so now." Doc. 192 at 3:21-23. The objections were argued on September 9, 2010, along with several other pretrial motions. The parties then quarreled over whether supplemental briefing filed by the government after the argument should be considered by the court. On September 16, 2010 the court issued an order denying defendant Ned Roscoe's motion to strike the supplemental briefing and gave

---

[2] The evidence is actually unclear as to whether Ned Roscoe ever became the president. He is described as president in a number of documents signed by him on behalf of Cigarettes Cheaper!.

[3] The court does not know what Mr. Baldwin's position was at the time with Cigarettes Cheaper!. It appears he was an officer and director but it is not clear which office he held, if any.

[4] It is unclear whether Attorney Cramer represented the company, one or more of the individuals, or all of them. Attorney Willoughby was the corporate bankruptcy attorney.

[5] The case has now been resolved as to John Roscoe.

1  defendants until September 29, 2010 to file additional briefing. On September 29, 2010 defendant
2  Ned Roscoe filed further briefing and attached a letter from William Bernheim who represented that
3  he was Cigarettes Cheaper!'s corporate counsel, that Cigarettes Cheaper! was in good standing, and
4  that he was asserting the attorney-client privilege on behalf of the corporation.

5     A second superseding indictment was filed on September 29, 2010, and trial that had been
6  set to start November 1, 2010 was continued to January 18, 2011.

7      After the supplemental briefing was submitted and prior to the filing of the court's order on
8  January 6, 2011, neither a motion to intervene nor any other pleading was filed by Attorney
9  Bernheim seeking to assert and protect any corporate attorney-client privilege. The only assertion
10 by the corporation was that made in the defendants' briefs. The court issued an order filed on
11 January 6, 2011 finding that Cigarettes Cheaper! was essentially defunct and no longer had an
12 attorney-client privilege to assert, but even if it still had the right to assert the privilege, it had been
13 waived. The court did not reach the crime-fraud exception to the privilege which the government
14 contended applied.

15    After the court issued its order, it was advised by counsel for the parties that the attorney
16 witnesses the government intended to call were concerned about testifying because of demands
17 made on them by Attorney Bernheim. The court then scheduled a hearing but was advised that only
18 Attorney Bernheim would appear, because the attorney witnesses intended to abide by whatever the
19 court ordered. Although Attorney Bernheim had neither sought to intervene nor filed anything with
20 the court to assert the attorney-privilege on behalf of Cigarettes Cheaper!, the court nevertheless
21 heard from him at a hearing held on January 20, 2011.

22    Attorney Bernheim testified that he became corporate counsel for Cigarettes Cheaper! in
23 2004 or 2005. He does not do its taxes and has not attended any board of directors meetings. He
24 stated that Cigarettes Cheaper! is registered in California "as far as I know" and that he has "seen
25 paperwork to the effect that they're a corporation in good standing." 9/20/11 Hearing Transcript at
26 14:25-15:2 ("HT at _____"). He indicated that he represents a lot of corporations and "do[es] a lot of
27 minute books and incorporations and that sort of thing, but I'm not involved in that part of their
28 business." *Id.* at 38:15-18. He does not know whether Ned Roscoe has been an officer or director

for Cigarettes Cheaper during the period he has represented Cigarettes Cheaper! but understood "he could speak for Cigarettes Cheaper!" *Id.* at 39:10-11.

Attorney Bernheim explained that he sent a letter dated September 24, 2010 to the U.S. Attorney handling the prosecution "on my own ticket other than I was told that [the attorney-client privilege] was an issue and my recall is that it was discussed with (*sic*) and it should be asserted." *Id.* at 35:18-21.  He further related that he did not

> know anything about what happened in November . . . . I don't know what was said, I don't want to know what was said.
> But my concern . . . it seems like if you breach the attorney-client privilege in one little bit, you breach it everywhere.
> I'm dealing with a separate piece of litigation where, where I don't know what was ever said about the price fixing scheme and what should be done or whatever.
> So I would just as soon keep the whole thing closed.

*Id.* at 36:10-25.

On October 5, 2010 the prosecuting U.S. Attorney informed Attorney Bernheim of the government's filings with the court dated July 26 and August 17, 2010 advising of the government's intent to offer the attorney-client communications.  Thereafter, on October 8, 2011 Attorney Bernheim advised the U.S. Attorney that he continued to assert the attorney-client privilege on behalf of the corporation.  Defense counsel for Ned Roscoe presented an unsigned letter of the Board of Directors to Attorney Bernheim dated January 14, 2011 to "engage your services in order to protect the attorney-client privileges of this corporation as of the date of this letter. . . ."

**I.    ANALYSIS**

The government contends that: (1) the communications at issue are not covered by a personal attorney-client privilege of either defendant; (2) defendant cannot assert a corporate attorney-client privilege; (3) Ned Roscoe has waived any privilege; and (4) the crime-fraud exception applies. Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law.  *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). Under federal law, as the party seeking to assert attorney-client privilege, defendants have the burden of establishing the privilege.  *See Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Because the privilege impedes full discovery of the truth, it is strictly

construed. *Ruehle*, 583 F.3d at 607.

### A. Personal Attorney-Client Privilege

Ned Roscoe cannot assert a personal attorney-client privilege because Mr. Mazur, a third party, was present at the November 21, 2003 meeting. He also cannot assert a personal attorney-client privilege because he is unable to meet the requirements of the *Bevill* test. *See In re Bevill*, 805 F.2d 120, 123 (3d Cir. 1986); *United States v. Graf*, 610 F.3d 1148, 1160 (9th Cir. 2010) (adopting *Bevill* test). Under the *Bevill* test, individual corporate officers or employees seeking to assert a personal claim of attorney-client privilege must affirmatively show that: (1) they approached counsel for the purpose of seeking legal advice; (2) when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities; (3) counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise; (4) their conversations with counsel were confidential; and (5) the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company. *Id.* Defendant has failed to establish elements (2), (3), or (5).

### B. Corporate Attorney-Client Privilege

The government argues that defendant cannot assert a corporate attorney-client privilege because: (1) he seeks only to protect his personal interests and was not acting in the corporation's best interests; and (2) the corporation (Cigarettes Cheaper!) for all practical purposes is defunct.

#### 1. Protection of Personal Interests

Managers of a corporation must exercise the corporate attorney-client privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). Defendant has not identified a specific reason why at this time Cigarettes Cheaper! would have any corporate interest in the assertion of the attorney-client privilege except perhaps to protect information that could be used in some way in one of the lawsuits in which it is apparently engaged. It may be that the only reason the corporation is asserting a privilege at this time is in an attempt to benefit Ned Roscoe as an individual. However, since litigation is pending, the court finds that Cigarettes Cheaper! has a corporate reason to assert the privilege and is not merely trying to protect

Ned Roscoe.

### 2. Defunct Corporation

A corporation that is defunct cannot assert the attorney-client privilege. *See City of Rialto v. United States Dep't of Defense*, 492 F. Supp. 2d 1193, 1199 (C.D. Cal. 2007); *Gilliland v. Geramita*, 2006 WL 2642525, at *4 (W.D. Pa. 2006). The parties dispute whether Cigarettes Cheaper! is defunct. In determining whether a corporation is defunct for the purposes of assertion of the attorney-client privilege, courts should consider "the practical realities of the business rather than technical legal status." *Gilliland*, 2006 WL 2642525, at *2.

John Roscoe testified (in unrelated litigation) that Cigarettes Cheaper! ceased doing business in 2004, no longer had any commercial activities, no longer had any operations, and had terminated its operations because it ran out of money. *See* Doc. 195 Exs. B, D, E. Similarly, Sally Baldwin, an officer of Cigarettes Cheaper! testified that the company was "phased out." *See id.* Ex. C. Nonetheless, defendants argue, supported by a strongly worded letter and subsequent testimony from Attorney Bernheim that Cigarettes Cheaper! is not defunct because: (1) it remains registered as a corporation and in good standing with the California Secretary of State; (2) it has current officers, including Ned Roscoe and John Roscoe[6]; and (3) it files tax returns.

No evidence has been offered disputing the fact that Cigarettes Cheaper! has been a non-operating, insolvent company since it phased out its operations in 2004. The attempt to assert the privilege raises the question of whether the Board's purported assertion at this time is consistent with the Board's fiduciary duty to the corporation and whether the Board is, in actuality, engaged in a disguised attempt to protect the communications from disclosure for the personal benefit of defendant Ned Roscoe, a family member. Nevertheless, since Cigarettes Cheaper! is apparently still in good standing with the state of California and is pursuing litigation seeking monetary recovery, it is not in a totally non-functioning status as were the companies in *City of Rialto* and *Gilliland.* In

---

[6] In claiming that he may assert the corporate attorney-client privilege, the defense takes the position that Ned Roscoe is a current officer of Cigarettes Cheaper! However, the court initially read his initial brief to claim that he was merely an ex-employee of Cigarettes Cheaper! and thus lacks the authority to waive the privilege. Counsel represents he never intended to suggest that he was claiming to be an ex-employee.

1  *City of Rialto* the company had been totally dissolved for approximately fifty years (492 F.Supp. 2d
2  at 1196) and in *Gilliland*, the chief executive officer was deceased, all other officers and directors
3  had apparently resigned, and there was no officer, director or manager in charge. 2006 WL 2642525
4  at *3. Although the court finds the issue close, particularly since the attorney-client privilege is
5  strictly construed as it impedes the discovery of the truth (*Ruehle*, 583 F.3d at 607), the court
6  reconsiders its previous ruling and holds that Cigarettes Cheaper! is not defunct to the extent that it
7  no longer has the right to assert an attorney-client privilege.

### 3. Waiver

The government argues that even if Cigarettes Cheaper! has the right to assert the attorney-client privilege, it has been waived as to the communications the government seeks to offer. In response to a grand jury subpoena addressed to Ned Roscoe and Cigarettes Cheaper! seeking "1. All written notes, as previously discussed, regarding contact with Comerica Bank involving discussions about adjustments to the borrowing base for Cigarettes Cheaper!  All worksheets and Excel files used to create inventory calculations." Ned Roscoe turned over the requested documents, including those on which the government bases its claim of waiver (notes from the November 21, 2003 meeting with counsel about Cigarette Cheaper!'s alternatives and approach to Comerica Bank and the November 22, 2005 page from Mr. Roscoe's diary reflecting that the corporation's bankruptcy attorney had recommended that someone other than the person who signed the borrowing base certificates should explain them).[7] At the time Mr. Roscoe was represented by Attorney Thomas Gill who was aware of the subpoena and apparently talked to Mr. Roscoe about it. In fact, approximately one month earlier, Ned Roscoe, Attorney Gill and another attorney by telephone voluntarily met with Special Agent Gunderson of the FBI.[8]  Mr. Roscoe related that at a meeting with Comerica Bank in November 2003 he did not inform Comerica Bank about

---

[7] The parties do not appear to dispute that these documents are what they purport to be. If, of course, the authenticity is disputed, the government will have to establish that the documents are what the government contends they are.

[8] Defendant moved to strike factual information contained in the government's letter brief submitted on January 21, 2011 (Doc. 258). The court has only consider testimony presented by Agent Gunderson under oath. Therefore, defendant's motion is moot.

adjustments to inventory because "the bankruptcy attorneys said that there could be some problem with them maintaining their bankruptcy protection if they went into too much detail or if they went into detail at that meeting." 1/25/11 Hearing Transcript at 250:13-17. Mr. Roscoe also said he kept a set of notes and a day planner and "that was the only written record of what had gone on as far as their communications with the bank." *Id. a*t 250:25-251:1. He also volunteered to give Agent Gunderson copies of his notes which Agent Gunderson accepted. The documents were later produced pursuant to the subpoena. The government contends that by disclosing these attorney-client communications, Ned Roscoe waived Cigarettes Cheaper!'s privilege with respect to discussions with attorneys regarding how to handle the situation with the outstanding line of credit with Comerica Bank.

Defendant does not focus his argument on whether his voluntary statements and production pursuant to the subpoena substantively constitute a waiver, but rather submits that he lacked the authority to waive the corporate attorney-client privilege. If Cigarettes Cheaper! is defunct, as discussed above, there is no need to determine whether there was a waiver of privilege, since a defunct corporation cannot assert an attorney-client privilege. But even if Cigarettes Cheaper! is not defunct, Ned Roscoe, as a current officer, board member and part owner of the company, has the authority to waive the corporate privilege. *See Commodity Futures*, 471 U.S. at 348.

Defendant's primary argument is that the waiver was only on behalf of Ned Roscoe personally. This argument is without merit. The subpoena was addressed to both Ned Roscoe and Cigarettes Cheaper! and sought Cigarettes Cheaper!'s records. Ned Roscoe was either president or vice-president of the company at the time, a board member and part owner and the one who had been signing on behalf of the company on the borrowing base certificates and other bank documents. As Attorney Bernheim testified, "my understanding was that [Ned Roscoe] could speak for the company." HT at 39:10-11. To suggest that he was acting only on his own behalf when he spoke to Agent Gunderson, learned the government was investigating the truth of Cigarettes Cheaper!'s submissions to Comerica Bank, and turned over records pursuant to the subpoena is not credible. There is also no evidence that the disclosures were inadvertent. The court affirms its January 6, 2011 conclusion that there was a waiver.

A question remains, however, as to the scope of the waiver. Generally, a waiver only extends to the communication or information disclosed. *See* FRE 502, Explanatory Note (a). There is a subject matter waiver only in "those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Id.* Defendants have represented that they do not intend to assert an advice of counsel defense, and the government has not shown that fairness in this case requires disclosure beyond the communications with counsel concerning alternatives and preparing for the meeting with Comerica Bank on November 24, 2005. Accordingly, the waiver of privilege is limited to the content of the discussion with counsel from on or about November 21, 2003 to the time of the meeting with the Bank representatives on November 24, 2011. There has been no waiver of the attorneys' work product protection. The government's proffer will be reviewed with the parties before any communications with counsel are discussed at trial. The parties may submit further briefing on the scope of the waiver on or before February 1, 2011 at noon.

**4.    Crime-Fraud Exception**

The government claims that even if the attorney-client privilege can be asserted by Cigarettes Cheaper! and the privilege was not waived by Ned Roscoe's disclosures, the communication between counsel and defendants on November 21, 2003 is not privileged because the crime-fraud exception applies. The court does not need to reach this issue in view of its finding on waiver.

DATED: 1/28/2011

RONALD M. WHYTE
United States District Judge