MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

EUMI L. CHOI (WVBN 722)
GRANT P. FONDO (CABN 181530)
Assistants United States Attorney

   150 Almaden Boulevard
   San Jose, California 95113
   Telephone: (408) 535-5079
   Facsimile:  (408) 535-5066
   Email: Eumi.Choi@usdoj.gov
        Grant.Fondo@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00373 RMW |
| | ) | |
| Plaintiff, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM FOR DEFENDANT |
| v. | ) | NED ROSCOE |
| | ) | |
| NED ROSCOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| —————————————————— | ) | |

        The United States of America, by and through its attorney, the United States Attorney for
the Northern District of California, hereby submits its sentencing memorandum as to defendant
Ned Roscoe.

**I.   Procedural Summary**

        Defendant Ned and co-defendant John Roscoe were charged in a second superseding
indictment with one count of conspiracy to commit bank fraud and to make false statements to a
bank, under 18 U.S.C. § 371, 13 counts of bank fraud, under 18 U.S.C § 1344, and 14 counts of

//

//

making false statements to a bank, under 18 U.S.C. §1014.[1]  Trial commenced on January 19, 2011.  During jury selection, defendant John Roscoe pleaded guilty pursuant to a Rule 11(c)(1)(A) and 11(c)(1)(B) plea agreement to count one, conspiracy to make false statements to a bank, in violation of 18 U.S.C. § 371.  Trial proceeded against defendant Ned Roscoe.  On February 22, 2011, a jury convicted defendant Ned Roscoe of each of the 28 charged counts in the pending  indictment.  Before the verdicts were rendered, the government dismissed the forfeiture charge.

**II. Sentencing Recommendation for Defendant Ned Roscoe**

Defendant Ned Roscoe, an owner and executive of a large, nationwide company named Cigarettes Cheaper! (the "Company"), devised and led a complicated scheme to defraud – and did defraud – Comerica Bank ("Bank") of a total of $10,743,724.  The United States agrees with the guidelines range set forth in the Presentence Report ("PSR") for Ned Roscoe, and recommends that he receive a sentence at the low end of his guidelines range, _i.e._, 168 months.

The base offense level for violations of 18 U.S.C. §§ 371, 1014, and 1344, under U.S.S.G. § 2B1.1(a) is 7.  The loss amount, $10,743,724, merits an increase of 20 points under U.S.S.G. § 2B1.1(b)(1)(K) (loss amount in excess of $7,000,000).  Ned Roscoe's actions also merit the application of three enhancements:  two points for the use of sophisticated means under U.S.S.G. § 2B1.1(b)(9)(C); four points for his position as an organizer or leader under U.S.S.G. § 3B1.1(a); and two points for his abuse of a position of trust under (U.S.S.G. § 3B1.3).  Defendant Ned Roscoe should receive no credit for accepting responsibility.  Thus, at level 35, with a criminal history category I and adjusted offense level 35, his guideline range is 168-210 months.

A.  The Loss is in Excess of $7,000,000.

After the submission of written briefs and oral argument on the issue of loss, this Court issued a written preliminary ruling.  It found that the intended loss applicable to defendant Ned

---

[1]        The charges of false statements to a bank were comprised of 13 counts of falsely inflated reports of inventory submitted to the bank and one count of making a false statement to the bank regarding the cause of the overstated reports of inventory.

Roscoe was $10,700,000.  <u>See</u> Order Preliminarily Determining Loss Amount under U.S.S.G. § 2B1.1 ("Order") at 3.

As to actual loss, the Court found that it was also $10,700,000, "assuming" that there was approximately $16 million owed to the Bank, and noting that whether $16 million was owed to the bank had not yet been proven, <u>see</u> Order at 4 and n.1.  Since the issuance of the Order, the United States filed the Affidavit of Melanie Dovano, attesting that, as of late November 2003, at the time Comerica Bank was informed of the Company's "accounting or clerical error" in overstating the value of its inventory in the borrowing base reports, the Company's outstanding balance on the loan was $21 million.  Shortly thereafter, the Company began liquidating its assets, and ceased operations.  Proceeds from the liquidation of Company assets and from the liquidation of guarantor collateral for the loan were used to pay down the principal amount of the loan to $16,354,832,21.[2]  <u>See</u> Declaration of Melanie Dovano ("Declaration"), ¶ 4.

The principal balance of $16,354,832.21 remained unchanged from approximately September 24, 2004, until early 2011.  Beginning in early 2011, Comerica Bank received a total of $253,66.36 in payments from tobacco settlement escrow accounts (often referred to as Master Settlement Accounts or the MSA) that the Company funded during its existence.  These payments were applied to the outstanding loan principal.  Therefore, the current outstanding principal balance on the Company's loan, as of December 1, 2011, is $16,101,165.85.[3]  <u>Id.</u> at ¶ 5.

The affidavit provides a sufficient evidentiary basis for the Court to find that the actual loss was $10,700,000.[4]  Moreover, the defense has not challenged the substance of the affidavit.

[2]      The payments also were applied to the monthly interest due and owing.

[3]      It is the Bank's understanding that it will continue to receive MSA payments until the MSAs are terminated, and that the MSA payments will be similar in amount to the most recent monthly payments of approximately $8,000.  Declaration at ¶ 5.

[4]      The Court's observation that its preliminary finding as to loss assumed there was approximately $16 million owed to the Bank does not appear to relate to its finding concerning intended loss, but the affidavit provides a sufficient basis for the Court to find that the intended loss is $10,700,000, as well.  Moreover, there was ample evidence at trial that the intended loss was $10,700,000.  <u>See</u>, <u>e.g.</u>, Trial Exhibit 129, and the trial testimony of Steve Grazinni and David Ballot.

Thus, there are no material facts in controversy necessitating an evidentiary hearing. Even if defendant did dispute this loss figure, he would have to bring down the loss figure by more than $9 million from the Bank's calculation to get the losses below the $7 million threshold to establish a lower loss figure.  See U.S.S.G. § 2B1.1(b)(1)(K).  Defendant has had ample opportunity to demonstrate such a large "error," but has not done so.

The PSR refers to the possibility that defendant Ned Roscoe may request an evidentiary hearing.  By the date of the sentencing, it will be nearly one full year from the date the jury rendered its guilty verdicts, and nearly five months since the hearing held on the issue of loss. At no time has defendant actually requested an evidentiary hearing, nor is there a basis to do so, unless he presents new facts (in contrast to legal arguments) not previously provided to the Court.  Nevertheless, should he now decide to request a hearing, and the Court grants the request, the hearing should be held on the date of the sentencing.  Further, defendant should identify which witness(es) he will call to testify and provide a description of the proposed testimony.  See Local Rule 32-5(b)(1)(d).  He should do so in advance of the February 8, 2012, sentencing date to allow the government adequate time to evaluate the proposed testimony, decide whether or not it will dispute any facts asserted by the defense, and, if necessary, prepare for any such hearing.[5]

B.  This Court Should Find The Three Enhancements Apply.

The Court has yet to decide whether the three enhancements recommended by the United States and the PSR apply.  The United States submits that each of the enhancements is amply supported by the record.  That is, Ned Roscoe's actions also merit the application of:

- two points for the use of sophisticated means under U.S.S.G. § 2B1.1(b)(9)(C);

- four points for his position as an organizer or leader under U.S.S.G. § 3B1.1(a); and

- two points for his abuse of a position of trust under (U.S.S.G. § 3B1.3).

The United States incorporates by reference the arguments and citations to record contained in its earlier-filed sentencing memorandum, filed on August 5, 2011, in support of the application

---

[5]      The amount of loss need not be determined with precision, rather the court need only make a reasonable estimate of the loss.  U.S. v. Najjor, 255 F.3d 979, 985 (9th Cir. 2001); see U.S.S.G. § 2B1.1 n. 3(C) (2011).

of these three enhancements.  See Dkt. No. 328, pp. 12-18.

        C.      This Court Should Impose A Low End Guidelines Sentence of 168 Months.

     The United States respectfully submits that the adjusted guidelines range of level 35 does not substantially overstate the seriousness of the offense so as to justify a downward departure, as contemplated by App. Note 19(C) to U.S.S.G § 2B1.1.  The PSR recommends a downward departure to 120 months based on this application note, citing defendant's lack of a criminal history, the low risk he posed to the community, and the adequacy of ensuring deterrence and providing adequate punishment.  PSR at Sentencing Recommendation, pp. 1-2. Yet, the PSR does not identify any specific factors not already contemplated by the guideline range.  For example, his guideline range reflects his lack of a criminal history.

     The United States recommends that defendant Ned Roscoe receive a low-end guidelines sentence, which is appropriate in light of the substantial fraud which he devised, implemented, and coerced others within his Company to help him execute over a sustained period of time.  The fraud he created and perpetuated became so brazen that eventually he instructed the Company's Controller and Assistant Controller to make up truck load after truck load of (Revenge) cigarettes to count them as inventory to the Bank.  He also caused Bailey Tobacco, the Company's primary supplier of private label brand cigarettes (Revenge), to unwittingly perpetuate the fraud by asking it to submit fraudulently inflated invoices so as to further falsely inflate the value of the Company's cigarette inventory, and fool Comerica Bank about the true value of its inventory.  Further, throughout the course of the fraud, defendant continued to substantially increase the fraudulent inflations of Company inventory to maintain the line of credit and avoid the Bank calling the loan – even when the Chief Financial Officer of the Company ("CFO") refused to sign the borrowing base reports.  In fact, defendant continued doing so for six months after the CFO refused to sign.  Defendant only stopped, and conceded that the Bank had to be informed of the over-extension of credit caused by the fraudulent inflation of the value of Company inventory, when it became clear that the fraudulent inflations could not be sustained.  Even then, he instructed his CFO to lie to the Bank as to the cause of its over-extension of credit – to tell the Bank that the error was due to a "clerical or accounting error" – and refused to provide the paperwork or explanation which the Bank subsequently

demanded.  A low-end guidelines range sentence of 168 months would adequately hold

defendant responsible for his actions, while sufficiently taking into consideration the concerns

noted in the PSR.[6]

     D.  <u>The Court Should Order Restitution in the Amount of $27,044,903.41.</u>

     The United States further recommends that, like defendant John Roscoe, defendant Ned

Roscoe be held jointly and severally liable for restitution.  We submit that restitution should be

ordered in the amount of $16,101,165.85,[7] which reflects the principal due to the Bank, as

recommended in the PSR, plus the accrued interest of $10,943,764.56, for a total of

$27,044,903.41.

     The amount of interest that has accrued on the loan, through December 1, 2011, is

$10,943,764.56.  The interest has been accruing at the default rate set in the loan agreements

between Comerica Bank and the Company (and signed and personally guaranteed by the Roscoe

family, including defendants Ned and John Roscoe), <u>i.e.</u>, prime plus 5.75%, since late 2003.  The

regular rate, when the Company was not in default, was prime plus 2.75%.  The principal

---

[6]   Defendant's failure to fully comply with the Probation Office regarding his
financial history and circumstances underscores the reasons why he should receive a guidelines
sentence.  <u>See</u> PSR at ¶ 97, and recommended special condition no. 2.  (We have requested
copies of the limited documents disclosed by defendant to Probation, but have yet to receive
them.)  This is particularly true where, as previously noted by the government, another court has
found defendant (and co-defendant John Roscoe) to be lacking in credibility in their testimony in
a judicial proceeding.  <u>See</u> Statement of Decision at 41 in <u>The People v.Convenience Acquisition
Corp.and John F. Roscoe, et al</u>, Super. Ct. No. 02AS001581 (August 31, 2006) ("There is very
little evidence in the record regarding defendants' assets and the Roscoe defendants were evasive
and not credible on this subject").  That is, defendant's lack of cooperation and full disclosure
regarding his assets, income and other financial issues is troubling, and echoes conduct in
another judicial proceeding and even the case at bar (bank fraud and false statements to a bank).

[7]   The restitution claim based on the principal lost is higher than the $10.7 million
overstatement of the borrowing base certifications.  However, the full loss is attributable to
defendant Ned and co-defendant John Roscoe.  First, the loan was secured by the cigarette
collateral, and it was overstated by more than $16 million.  <u>See</u> Trial Exhibit 129.  Further,
defendant's fraud included vastly increasing the number of private label cigarettes.  These
cigarettes, unlike national brands, had almost no resale value, thus further depriving Comerica
Bank of re-sellable collateral.  The fraud also circumvented the dominion of funds account,
another protection for the Bank intended to prevent loss on the Company's loan.  Further, the
fraud started in May 2003, yet was not discovered until late November 2003, when the "death
spiral" was in full effect, making it that much harder for the Bank to recover on the loan.

balance of $16,101,165.85, plus the aforementioned accrued interest, remains unpaid.  The total in losses on the loan, as of December 1, 2011, is $27,044,930.41.  This figure does not include any expenses associated with collection of this debt.  Affidavit at ¶ 6.

Under the pertinent statute, the order of restitution shall require a defendant to pay an amount equal to the value of the property on the date of the loss.  <u>See</u> 18 U.S.C. § 3663A(b)(1)(B)(i)(I).  <u>See also</u> 18 U.S.C. § 3664(f)(1)(A) ("[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses, as determined by the court and without consideration of the economic circumstances of the defendant").  Further, it has been recognized by the Ninth Circuit that part of a crime victim's actual loss includes pre-judgment interest.  <u>See</u>, <u>e.g.</u>, <u>United States v. Smith</u>, 944 F.2d 618, 625-626 (9th Cir.1991); <u>United States v. Catherine</u>, 55 F.3d 1462, 1465 (9th Cir. 1995).  Thus, the Court should order restitution in the amount of $27,044,903.41.

E.  <u>The United States Agrees with the Remaining Sentencing Recommendations</u>.

As to the other sentencing recommendations in the PSR, the United States agrees that there should be no fine, no probation, three years of supervised release for count one, and five years of supervised release for the remaining counts, and that defendant should pay $2,800.00 in special assessments at the time of sentencing.

Date: January 23, 2012

Respectfully submitted,

MELINDA HAAG
    United States Attorney

_____/S/_____
EUMI L. CHOI
GRANT P. FONDO
Assistant United States Attorney

United States' Sentencing Memorandum for Defendant Ned Roscoe