1   VICKI H. YOUNG
    Law Offices of Vicki H. Young
2   706 Cowper Street, Suite 205
    Palo Alto, California 94301
3

4   Telephone    (415) 421-4347

5   Counsel for Defendant NED ROSCOE

6

7           IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,     )  No. CR-07-00373 RMW
                            )
11                   Plaintiff,    )  DEFENDANT'S SENTENCING
                            )  MEMORANDUM AND REQUEST FOR
12   vs.                         )  EVIDENTIARY HEARING
                            )
13   NED ROSCOE,             )
                            )  Date:   February 8, 2012
14                 Defendant.  )  Time: 10:00 a.m.
    _____)  Judge: Whyte

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      Factual Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Applicable Sentencing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Factual and Legal Objections to Presentence Report  . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.      The Government Has Failed to Prove Facts
            Underlying the Loss Calculation   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.      Objections to Sentencing Guideline Calculations  . . . . . . . . . . . . . . . . . . . . . . . 4

            1.      Loss Amount  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            2.      Credits Against Loss  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            3.      An Enhancement for Sophisticated Means is Not Warranted  . . . . . . . . . . 8

            4.      An Enhancement for Abuse of Position of Trust is Not Warranted  . . . . . 9

            5.      Objection to a four-leval Aggravating Role Enhancement  . . . . . . . . . . . 11

IV.     An Evidentiary Hearing Pursuant to F.R.Cr.P. 32 is Required  . . . . . . . . . . . . . . . . . . . 12

V.      The Current Fraud Guidelines and Cumulative Enhancements
      Routinely and Unjustly result in Draconian Sentencing Ranges . . . . . . . . . . . . . . . . . . . 14

VI.     Relevant Sentencing Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.      First Offender Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      B.      Ned Roscoe Was Not Motivated by Greed,
            but by a Desire to Keep the Family Business Running  . . . . . . . . . . . . . . . . . . . 17

VI.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## Federal Cases

Groppi v. Barham, 157 Fed.Appx. 10 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lauerson v. U.S., 543 U.S. 1097 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

United States v. Armstead, 552 F.3d 769 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Autery, 555 F.3d 864 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Bennett, 363 F.3d 947 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Berger, 473 F.3d 1080 (9th Cir., 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

United States v. Berger, 543 F.3d 1080 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Bollin, 264 F.3d 391 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Booker, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

United States v. Carter, 2010 WL 1342812 (N.D. Cal., 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Diaz-Lopez, 625 F.3d 1198 (9th Cir. 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Edelmann, 458 F.3d 791 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Emmenegger, 329 F.Supp.2d 416 (S.D.N.Y., 2004) . . . . . . . . . . . . . . . . . . . . 15

United States v. Garcia Sanchez, 189 F.3d 1143 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Garro, 517 F.3d 1163 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Gordon, 393 F.3d 1044, 1048 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Govan, 152 F.3d 1088 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Hoac, 990 F.2d 1099 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Huckins, 529 F.3d 1312 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Jolly, 102 F.3d 49 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Lauersen, 362 F.3d 160 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Mares-Molina, 913 F.2d 770 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Milne, 308 F.Supp.2d 1309 (E.D. Wis. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Oldani, 2009 WL 1770116 (S.D.W.Va., June 16, 2009) . . . . . . . . . . . . . . 16, 17

United States v. Parris, 573 F.Supp.2d 744 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wis. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Rose, 20 F.3d 367 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Rowan, 530 F.3d 379 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Rubashkin, 718 F.Supp.2d 953 (N.D. Iowa, 2010) . . . . . . . . . . . . . . . . . 9, 10, 11

United States v. Waldner, 580 F.3d 699 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Wilson, 900 F.2d 1350 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Federal Statutes**

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

18 U.S.C. § 3663A [MVRA] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**United States Sentencing Guidelines**

U.S.S.G. § 2B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 2B1.1 Application Note 3(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 2B1.1 Application Note 3(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

U.S.S.G. § 2B1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 2B1.1(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 2B1.1(b)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 2B1.1 Application Note 8(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 2F1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 3B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

U.S.S.G. § 3B1.1 Application Note 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S.S.G. § 3B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S.S.G. § 6A1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Other**

Federal Rule of Criminal Procedure 32(i)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Federal Rule of Evidence 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*"Sentencing High-Loss Corporate Insider Frauds After <u>Booker</u>"*,
20 Fed. Sentencing Reporter 167, (Feb. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S.S.C., *Fifteen Years of Guideline Sentencing:*
*An Assessment of How Well the Federal Criminal Justice System*
*is Achieving the Goals of Sentencing Reform* 50, 137 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.C., *Preliminary Quarterly Data Report, Fourth Quarter FY 2010,* tbl 5. . . . . . . . . . . . . 14

U.S.S.C, Proposed Amendments to the Sentencing Guidelines, Jan. 19, 2012. . . . . . . . . . . . . 16

1   Vicki H. Young
    706 Cowper Street, Suite 205
2   Palo Alto, California 94301
    Telephone: (415) 421-4347
3
4   Attorney for Defendant NED ROSCOE

5              **UNITED STATES DISTRICT COURT**

6          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

7

8   UNITED STATES OF AMERICA,          )   CR 07-00373 RMW
                                       )
9                    Plaintiff,        )   DEFENDANT'S SENTENCING
                                       )   MEMORANDUM AND REQUEST
10          vs.                        )   FOR EVIDENTIARY HEARING
                                       )
11  NED ROSCOE,                        )   Date:   February 8, 2012
                                       )   Time:  10:00 a.m.
12  _____Defendant._____ )   Judge: Whyte

13

14                  **I. FACTUAL BACKGROUND**

15          On February 22, 2011, Ned Roscoe was convicted of all counts in the Second Superceding

16  Indictment, with violations of conspiracy to commit bank fraud, bank fraud, and false statements to

17  a financial institution, in violation of 18 U.S.C. §§371, 1344, and 1014.  This case was tried before

18  this court a year ago.  The trial took approximately four weeks.

19          The following summary is derived from the documentary evidence that was admitted at trial.

20  Ned Roscoe was an officer of a privately held company, Cigarettes Cheaper! that owned hundreds

21  of stores throughout the United States.  The Roscoe family had a long-standing banking relationship

22  with Comerica Bank that started in the early 1990's.  To finance the operations, Cigarettes Cheaper

23  obtained an asset-based revolving line of credit from Comerica Bank that began in February 1999.

24  The loan was secured by personal guarantees of Ned Roscoe and other family members.

25          The initial loan agreement provided for a $25 million dollar line of credit, to be secured by

26  70% of "eligible store inventory" referred to as the "borrowing base."  The Loan was then increased

27  to $50 million.  In 2001, the terms were amended because the company had been experiencing

28  financial difficulties and the loan was in default. The parties executed a forbearance agreement and

amendment of the loan.  The loan amount was decreased and the terms of the loan (including the definition of the borrowing base) were made more stringent.    The borrowing base reports of inventory were provided to Comerica Bank in periodic statements referred to as "borrowing base reports."  Robert Mazur was the company CFO and initially had the responsibility for signing the borrowing base certificates with Comerica.  Ned Roscoe signed the majority of borrowing base reports provided to Comerica Bank starting in May 2003, ending with a borrowing base report for the week ending November 14, 2003, submitted to the bank on November 18, 2003.

The government presented testimony during the trial that the borrowing base reports signed by Ned Roscoe were not accurate and did not correctly reflect the amount of "eligible inventory" on hand.  As a result of three of the reports signed by Ned Roscoe, Cigarettes Cheaper! received advances totaling $571,721.94.  Cigarettes Cheaper! did not receive funds for seventeen of the borrowing base reports that were submitted between May and November 2003.

In November 2003, Cigarettes Cheaper! provided a "restatement" to Comerica Bank which revalued the inventory at about 15,801,278, $16 million less than had previously been reported. [Gov't Exhibit 129] Comerica Bank did not cancel the loan as a result of this new information.  The Line of Credit was subsequently amended (the Twelfth Amendment) on January 2, 2004, and again in the Thirteenth Amendment on July 12, 2004. The Twelfth Amendment of Credit acknowledged that there was a "Permitted Over advance" in the amount of $10,730,000.

Since November 2003, Cigarettes Cheaper! has paid Comerica Bank more than $6 million as a result of the liquidation of collateral pledged against the loan.

## II.  APPLICABLE SENTENCING LAW

United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005) changed the landscape of federal sentencing. Booker reduced the sentencing guidelines from a mandatory to an advisory regime. This shift in regime requires federal courts to consider all of the 18 U.S.C. §§ 3553(a) factors in imposing sentence. United States v. Ameline, 409 F.3d 1073 (9th Cir.2005) (en banc) The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed—

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational  training, medical care, or other correctional treatment in the most effective  manner."

18 U.S.C. § 3553(a)(2).  In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities,  and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. §  3553(a)(1)–(7).

## III.  FACTUAL AND LEGAL OBJECTIONS TO PRESENTENCE REPORT

### A.  The Government Has Failed to Prove the Facts Underlying the Loss Calculation

In the Court's Order Preliminarily determining Loss Amount under U.S.S.G. 2B1.1, the court ruled that the actual and intended loss associated with Ned Roscoe is $10,700, 000.  At the Sept. 12, 2011, hearing, the court stated "I will send out a tentative ruling with respect to the loss calculation.  If you feel there is something I have stated that is subject to evidentiary dispute, you can advise me and we can take it up at a future hearing or at sentencing." <u>see</u> Exhibit A.

The court's ruling was predicated upon the Government's introduction of witness statements that a Dominion of Funds account had been established in approximately 2000.  The defense objected to the assertions in the government's brief. The defense objects to consideration of the witness statements regarding a purported Dominion of Funds account as inadmissible pursuant to the Best Evidence Rule.  F.R.Evid. Rule 1002 incorporates the Best Evidence Rule. "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

> [P]resenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dispositive instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights. In addition, it is to be considered (1) that there has been substantial hazard of inaccuracy in some of the commonly utilized methods of making copies of writings, and (2) oral testimony purporting to give the terms of a writing from memory is probably subject to a

greater risk of error than oral testimony concerning other situations generally. The danger of mistransmitting critical facts which accompanies the use of written copies or recollection, but which is largely avoided when an original writing is presented to prove its terms, justifies preference for original documents.

U.S. v. Diaz-Lopez 625 F.3d 1198, 1201 -1202 (9th Cir., 2010)

Proffering testimony about a writing is inadmissible absent the actual writing itself. In United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004), *cert. denied,* 543 U.S. 950 (2004) the district court had allowed the Customs Officer's GPS testimony regarding the defendant's location, characterizing the GPS display, without introducing it. The Ninth Circuit reversed, noting what the officer saw was a "writing or recording," within the meaning of Rule 1002, Fed.R.Evid., because the officer "saw a graphical representation of data that the GPS had compiled about the path of Bennett's boat." Bennett. at 953.

In Groppi v. Barham, 157 Fed.Appx. 10, 2005 WL 303473 (9th Cir. 2005), the Ninth Circuit upheld the district court's application of the best evidence rule to exclude the witness' declaration because the witness failed to provide the records upon which the declaration was based an failed otherwise to explain their absence.  Id. At 11, citing Bennett.

Bennett controls the case at bar because the Government has not produced any admissible, reliable documentary evidence of the existence and operation of a "Dominion of Funds" bank account.  The proffered statements violate the Best Evidence Rule and must be stricken.  The Court's Preliminary Finding of Loss depends upon the existence and operation of such an account, and must be vacated.

## B.  Objections to Sentencing Guideline Calculations

### 1.  Loss Amount - USSG 2B1.1(b)(1)

U.S.S.G. 2B1.1 Application Note 3(A) defines "actual loss" as the reasonably foreseeable pecuniary harm that resulted from the offense and "intended loss" as the pecuniary harm that was intended to result from the offense.

The defense contends that the "intended loss" in this case is zero, and that the "actual loss" figure should be $370,000. This loan was secured by personal guarantees of all the Roscoe

1  family members as well as liens on their substantial assets.  Cigarettes Cheaper! was making

2  regular payments on the interest due.  There is no evidence that the Roscoes, and Ned Roscoe in

3  particular, intended that the bank suffer any loss.

4  The Ninth Circuit has already established the methodology to be applied in calculating

5  "loss" in a "borrowing base" case.  In <u>United States v. Berger</u>, 473 F.3d 1080 (9th Cir. , 2007),

6  the Ninth Circuit held that the valuation of "loss" in a borrowing base case is limited to the

7  amount that the bank advanced based upon the borrowing base certificates at issue, reduced by

8  the percentage of the loan recovered by the bank from the disposition of the collateral.

9  <u>Berger</u> involved a company that was required to provide the bank with a Borrowing Base

10  Certificate (BBC) every business day. Each BBC was supposed to report accurately the accounts

11  receivable eligible for borrowing, updated on a daily basis, and the value of its inventory eligible

12  for borrowing, updated on a weekly basis. Tthe bank used the Borrowing Certificates to

13  determine the amount of money the company could borrow on each business day. Specifically,

14  the lending banks conditioned their lending decisions on whether the company had excess

15  borrowing availability based on the information-particularly the accounts receivable and

16  inventory eligible for borrowing purposes-set forth in the daily Borrowing Certificates.  The

17  false statements in <u>Berger</u> resulted in the lending banks lending millions of dollars to the

18  borrower company based on either nonexistent or substantially overstated collateral.

19  In <u>Berger</u>, the district court rejected the government's initial position that the "loss" was

20  the total amount the bank lost on the loan.  Instead, the district court considered the loan

21  advances obtained by the company based upon the submission of the borrowing base certificates

22  (BBCs) linked to his six counts of conviction for loan fraud as the gross amount of the loss, and

23  then discounted that gross amount by the percentage of funds recovered by the victim banks

24  when they foreclosed on the company's collateral.  The company had only received advances on

25  two of the six BBCs underlying the defendant's convictions.  The district court determined that

26  the actual loss, i.e., the amount advanced, caused by the defendant's fraud was $4,976,000.

27  After that figure was reduced by the appropriate percentage of foreclosed collateral, the total net

28  loss was $3,144,832, and accordingly the district court ordered the defendant to pay restitution to

1    the lending banks in precisely that amount.

2          The case was appealed to the Ninth Circuit.  In affirming the district court's loss analysis,

3    the Ninth Circuit held that

4                the district court's restitution calculation method was, in light of
                 the circumstances, quite reasonable and fair. In calculating the $3.1
5                million restitution award, the district court devised a reasonable
                 formula for determining the amount of the lending banks' loss that
6                was attributable to the fraud.

7    United States v. Berger, 473 F.3d 1080, 1108 (9th Cir. 2007)

8          The Ninth Circuit noted that in devising this restitution formula, the district court relied

9    on guideline section USSG § 2F1.1, which did not detract in any way from the reasonableness of

10   its approach.  Id, at 1109, n. 10.  The MVRA [18 U.S.C. § 3663A]  permits "district courts to

11   engage in an expedient and reasonable restitution process, with uncertainties resolved with a

12   view toward achieving fairness to the victim." United States v. Gordon, 393 F.3d 1044, 1048 (9[th]

13   Cir. 2004).  In light of the MVRA's goals and the complexities of the Credit Agreement, the

14   district court did not abuse its discretion in its restitution order. U.S. v. Berger 473 F.3d 1080,

15   1108 (9th Cir, 2007).

16         While the conviction and restitution amount were affirmed by the Court, Berger's

17   sentence was vacated and remanded to the district court for re-sentencing in light of United

18   States v. Booker, 543 U.S. 220 (2005).  On remand, using a preponderance of the evidence

19   standard, the district court applied the same methodology previously applied to the restitution

20   calculation to determine the actual loss for guideline purposes, under USSG § 2F1.1 and found

21   that the amount of actual loss caused by the defendant's loan fraud convictions is $3.14 million,

22   thereby triggering a thirteen-level enhancement under U.S.S.G. § 2F1.1. The district court's

23   calculation of loss was upheld in United States v. Berger, 587 F.3d 1038 (9th Cir. 2009).

24         The methodology applied to calculate loss in Berger should be applied to the instant case.

25   As with Berger, the "actual loss" should be the net amount that Comerica Bank advanced to

26   Cigarettes Cheaper! based on the Borrowing Base Reports that had been submitted during the

27   time period in question. The total amount advanced as a result of the borrowing base statements

28   signed by Ned Roscoe is $571,721.94.

Comerica Bank had already advanced approximately $21 million to Cigarettes Cheaper! by May 2003. Comerica Bank only advanced approximately $571,000 in additional funds in the subsequent six months before the November 2003 restatement.  As in <u>Berger</u>, the "loss" should be calculated on the amount that was advanced on the fraudulent BBCs, less the amounts recovered on the collateral. Cigarettes Cheaper! has paid Comerica Bank more than $6.8 million as a result of the liquidation of collateral pledged against the loan, an amount which is over ten times the amount actually advanced by Comerica Bank as a result of the borrowing base reports signed by Ned Roscoe.  Under the Berger formula, the $571,721.94 loss should be reduced by 33%, i.e. $6.8 million divided by $20,162,760, resulting in a "loss" of approximately $376,200. Ironically, the government has taken the position that the "loss" figure for co-defendant John Roscoe is $370,603, even though they continue to argue that the "loss" figure for Ned Roscoe is $10.7 million.

2.  Credits against Loss

Under the Guidelines, that loss amount must be reduced by the amount that the bank has received against the loan. The guidelines state that "loss" shall be reduced by the following:

> (i)      The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected.

> (ii)     In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from the disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

U.S.S.G. 2B1.1, Application Note 3(E).

This is the unusual case where the bank has already recovered millions of dollars from the disposition of the pledged collateral.  We are still in the process of obtaining accurate records regarding the amounts received in the asset liquidation account as well as from the disposition of other pledged collateral.  While the declaration filed by Melanie Dovano states that the principal balance of the CC! Loan remained unchanged from approximately September 24, 2004, until early 2011, she failed to note that Comerica Bank had also received over $2.8 million from the

1   disposition of assets which the bank applied towards interest due.

2       Records recently been obtained from Comerica Bank indicate that since November 2003,

3   CC! has paid Comerica Bank over $6.8 million out of store sales, inventory liquidation, real

4   estate sales, and the recovery of excise taxes. In addition to the funds already received, Comerica

5   Bank continues to receive funds because of liens that have placed against all the Roscoe

6   accounts.  Comerica Bank has a lien on CC! MSA escrow accounts at the bank.  Comerica Bank

7   also expresses an interest in escrow accounts owned by Bailey Tobacco that were deposited by

8   the Roscoe family.  Under the Guidelines, any "loss" amount must be reduced by these credits. §

9   § 2B1.1 Application Note 3(E).

10

11          3.  An Enhancement for Sophisticated Means Is Not Warranted

12      The PSR has recommended a two-level enhancement for "sophisticated means," USSG

13  2B1.1(b)(9).  The guidelines define "sophisticated means" as "especially complex or especially

14  intricate offense conduct pertaining to the execution or concealment of an offense."  2B1.1

15  Application Note 8(B).

16      It is submitted that the conduct in this case is not significantly more complex than any

17  other case involving fraudulent submissions to a bank. The accountants testified that the

18  borrowing base reports were prepared on a weekly basis and faxed to Comerica Bank, as

19  required by the terms of the loan.  The accountants testified that David Ballot keyed the

20  borrowing base report entries into a spreadsheet to inflate the amount of eligible inventory.

21  There is no evidence that any other false documentation was presented to the bank.

22      There is a significant difference between the complicated schemes involved in the cases

23  cited by the government and the conduct in the instant matter.  In United States v. Edelmann,

24  458 F.3d 791, 816 (8th Cir. 2006), the defendant had created and used numerous false documents,

25  including multiple years of federal tax returns, supporting federal tax documents, such as W–2

26  and 1099 forms, bank statements (created from whole cloth), Articles of Incorporation from the

27  Arkansas Secretary of State, profit and loss statements, and a series of bank letters. The Court of

28  Appeals found that production of these false documents demonstrated sophisticated means.

1    There is no evidence that Ned Roscoe was hiding assets or transactions through the use

2    of fictitious entities, corporate shells, or offshore financial accounts. Unlike the defendant in

3    United State v. Carter, 2010 WL 1342812 (N.D. Cal. 2010), Ned Roscoe did not use

4    sophisticated equipment in a scheme that involved multiple layers of fraud.    Unlike the

5    defendant in United States v. Garro, 517 F.3d 1163, 1169 (9th Cir. 2008), Ned Roscoe made no

6    attempt to "avoid having his name appear on the transaction or assets."  In fact, the gravamen of

7    the instant offense is that his signature appears on the borrowing base certificates.  In the Berger

8    case discussed above, for conduct that most closely resembles the facts of this case, the

9    government had not even sought an enhancement for sophisticated means.  While the court in

10   United States v. Rubashkin, 718 F.Supp.2d 953 (N.D. Iowa 2010) found sophisticated means, the

11   district court found that the case involved much more than the only the submission of false

12   BBCs.

13          Over a period of many years, Defendant created numerous false invoices, bills of
            lading and collateral certificates . . . Many of these documents contained
14          forgeries. For instance, Defendant created false bills of lading to accompany the
            false invoices. In an effort to make the bills of lading look as legitimate as
15          possible, Defendant directed that an Agriprocessors employee forge the signature
            of a truck driver likely to be assigned the route indicated on the false bill of
16          lading. In another effort to appear legitimate, Defendant went to great lengths to
            manipulate records in Agriprocessors' computer-based accounting system
17          (APGEN) to reflect the number of false sales created by falsifying invoices and
            bills of lading so that the fraud would not be detected during routine audits.
18          Defendant falsified the invoices and other documents and manipulated the
            accounting system in order to hide Agriprocessors' actual financial situation from
19          FBBC.

20   United States v. Rubashkin, id at 975.

21          The government characterizes the Cigarettes Cheaper! loan as a "sophisticated fraudulent

22   scheme," however the only scheme described is that of an accountant, David Ballot, making

23   false entries into the spreadsheets used to produce the weekly borrowing base reports which Ned

24   Roscoe signed over a six-month period. There was no evidence that any other documentation

25   was forged or altered.  It is submitted that false valuations are common in routine borrowing

26   base fraud cases.  The sophisticated means enhancement should be reserved for cases that are

27   outside

28   of the norm, not routine. The enhancement for sophisticated means should not be applied.

1

## 4. An Enhancement for Abuse of Position of Trust Is Not Warranted

2      The PSR recommends that that the enhancement that Ned Roscoe abused a position of

3 trust (USSG 3B1.3) should be applied.  Section 3B1.3 provides for a 2-level upward adjustment

4 if the defendant abused a position of public or private trust, or used a special skill, in a manner

5 that significantly facilitated the commission or concealment of the offense. Once the sentencing

6 court has determined that a person occupies a position of private trust, the position of trust must

7 have contributed in some significant way to facilitating the commission or concealment of the

8 offense before the enhancement may apply. United States v. Waldner, 580 F.3d 699 at 706 (8th

9 Cir. 2009).

10      Section 3B1. 1 precludes an enhancement where the abuse of trust is included in the

11 specific offense characteristic. Where fraud occurs in arm's-length transactions not involving

12 fiduciary-like relationships, the "trust" that is "abused" is simply the reliance of the victim on the

13 misleading statements or conduct of the defendant. That trust is a specific offense characteristic

14 of fraud, and a Section 3B1. 3 enhancement is inappropriate. United States v. Jolly, 102 F. 3d 46,

15 49 ( 2d Cir. 1996).

16      In every case of fraud, the defendant will have gained the confidence and trust of the

17 victim. But fraud alone does not justify the enhancement. United States v. Bollin, 264 F.3d 391,

18 415 (4th Cir. 2001). "A sentencing court must carefully distinguish between those arms-length

19 commercial relationships where trust is created by the defendant's personality or the victim's

20 credulity, and those where a fiduciary or personal trust relationship exists with the victim."

21 United States v. Bollin, id, at 415.  Only the latter circumstances justify the enhancement.

22      In Rubashkin, the district court found that in absence of a fiduciary relationship between

23 the defendant borrower and the victim banks, the enhancement for abuse of position of trust is

24 not warranted where the banks relied upon the misrepresentations.  Similarly, the district court in

25 Berger, did not apply the enhancement for abuse of position of trust.

26      Although Ned Roscoe was an officer of Cigarettes Cheaper!, this case involves an arms

27 length transaction between the company Cigarettes Cheaper! and Comerica Bank. The testimony

28 at trial was that no one from the bank contacted Ned Roscoe after he began signing the

1   borrowing base reports.  Ned Roscoe did not hold a position of trust vis-a-vis the bank.  The

2   relationship was that of a borrower and lender.  The enhancement for abuse of position of trust

3   should not apply.

4                    5.  Objection to a Four-level Aggravating Role Enhancement

5          The Probation department recommended that a four level upward adjustment under

6   3B1.1 as an organizer, leader of an offense that involved five or more participants or "otherwise

7   extensive" is warranted.  To justify an increase under § 3Bl.l, the government must prove by a

8   preponderance of the evidence that the defendant had an aggravating role in the offense. United

9   States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir. 1990). Factors the court should consider

10  include the exercise of decision making authority, the nature of participation in the commission

11  of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of

12  the crime, the degree of participation in planning or organizing the offense, the nature and scope

13  of the illegal activity, and the degree of control and authority exercised over others. § 3B1.1

14  Application Note 3. "In assessing whether an organization is 'otherwise extensive', all persons

15  involved during the course of the entire offense are to be considered."

16         The facts of this case do not support the conclusion by a preponderance of the evidence

17  that the criminal activity involved five or more participants or was "otherwise extensive."  CFO

18  Robert Mazur stopped signing the borrowing base certificates in May 2003.  The two

19  accountants David Ballot and Steve Grazzini testified that they then prepared the borrowing base

20  certificates at the direction of Ned Roscoe.  Ned Roscoe signed the borrowing base certificates.

21  There was no evidence that Mazur participated in the preparation of the borrowing base

22  certificates after May 2003.  There was no evidence that John Roscoe "participated" in the

23  preparation of the borrowing base certificates, although there was some evidence that he was

24  aware of the practice.  The evidence at trial was that there were four criminally responsible

25  participants – Ned Roscoe, David Ballot, Steve Grazzini, and [marginally] John Roscoe.

26         There is no evidence of "extensive" criminal activity as that term is envisioned by the

27  guidelines. Cigarettes Cheaper! had a large number of legitimate employees for the business. The

28  "organizing" or "control" exercised in running these businesses does not necessarily equate to

1  the level of "organizing others for the purpose of carrying out the crime." <u>United States v. Hoac</u>,

2  990 F.2d 1099 (9th Cir. 1993).

3    Whether criminal activity is "otherwise extensive" depends on such factors as (1) the

4  number of knowing participants and unwitting outsiders; (2) the number of victims; and (3) the

5  amount of money fraudulently obtained or laundered. <u>United States v. Govan</u>, 152 F.3d 1088,

6  1096 (9th Cir. 1998) citing <u>United States v. Rose</u>, 20 F.3d 367, 374 (9th Cir. 1994). In <u>Govan</u>, the

7  Ninth Circuit held that interstate travel, a large number of victims, as well as nearly $100,000 in

8  robbery proceeds was the "paradigm" of "otherwise extensive" criminal activity. <u>Id</u>. At 1096.

9  In <u>Rose</u>, the scheme involved approximately $3 million, sixty knowing or unwitting employees

10  or outside accountants, a considerable number of bank employees and scores of duped investors.

11    Ned Roscoe was not in any sense the "kingpin" of a criminal conspiracy. The case

12  involves businessmen trying to keep the failing business going. The bank officer and Cigarettes

13  Cheaper! employees testified that there was constant tension between the company and the bank

14  about the strict and increasingly stringent definitions of eligible inventory required by the bank.

15  These requirements restricted the amount of capital available to purchase new product. The

16  borrowing base reports had to be prepared on a weekly basis as a condition of the loan.  The only

17  "criminal" conduct was the erroneous valuation of the eligible inventory on the reports. This is

18  not evidence of a criminal activity that is "otherwise extensive."

19    Since the criminal activity did not involve five or more participants and was not

20  otherwise extensive, the only enhancement applicable under aggravating role is a two level

21  increase under § 3B1.1(c).

22

23  **IV. AN EVIDENTIARY HEARING PURSUANT TO F.R.CR.P. 32 IS REQUIRED**.

24    Pursuant to F.R.Cr.P. 32(i)(3)(B), this court must hold an evidentiary hearing to resolve

25  disputed matters.  The defense disputes the existence and operation of a dominion of funds

26  account. We dispute the characterization of the dominion of funds account.  We dispute the

27  "loss" amount claimed by Comerica Bank.

28    The Government has not presented any documentary evidence of the existence of a

1   dominion of funds account, and no evidence of how much money was in the dominion of funds

2   account at any time, if such a fund ever existed.  There was no evidence that Comerica had the

3   authority to take funds from the dominion of funds account to pay down the line of credit as

4   needed to maintain the required eligible inventory value/loan amount ratio.  There is no evidence

5   that the borrowing base reports hid from the bank the inadequacy of CC's eligible inventory.

6   There is no evidence that CC! was able to use all the revenue realized by its stores.  There is no

7   evidence that the bank would call the loan in view of the number of previous forbearances.

8   There is no evidence that Ned Roscoe had any knowledge of the operation of a dominion of

9   funds account, if one existed.  There is no evidence that the amount of the November 14, 2003,

10  overstatement was the result of the borrowing base reports signed by Ned Roscoe. These are

11  factual disputes material to sentencing that must be resolved by the court.  F.R.Cr.P. 32(i)(3)(B).

12      The government bears the burden of proving the factual predicate for an upward

13  adjustment by competent evidence.  United States v. Ameline, 409 F.3d 1073, 1085 (9th Cir.

14  2005). When a sentencing factor has an extremely disproportionate effect on the sentence

15  relative to the offense of conviction, a district court find the facts by a clear and convincing

16  standard of proof. United States v. Armstead, 552 F.3d 769, 776 (9th Cir. 2008).

17      Due process requires that a defendant should be afforded a right to confront adverse

18  witnesses when a sentence may be based on hearsay.  Notwithstanding the fact that hearsay is

19  admissible at sentencing, the guidelines require that the information has sufficient indicia of

20  reliability. U.S.S.G. §6A1.3.  A defendant clearly has a due process right not to be sentenced on

21  the basis of materially incorrect information.  United States v. Garcia Sanchez, 189 F.3d 1143

22  (9th Cir. 1999).  The sentence must be supported by sufficient reliable evidence. See United

23  States v. Wilson,  900 F.2d 1350, 1354 (9th Cir.1990) (recognizing "a defendant's due process

24  right to ensure the reliability of information used at sentencing").

25      In the instant case, the government has not introduced any documentary evidence

26  reflecting the existence of a "Dominion of Funds" account.  The only writing referred to in the

27  witness statements is Gov't Exhibit 196, which contains a section that purports to convert a pre-

28  existing account into a dominion of funds account.  No evidence has been produced to show that

the preexisting Master Concentration Account was ever converted or that a dominion of funds account controlled by Comerica Bank existed prior to 2004.  The Government has not presented an accurate accounting of the status of the loan and the payments to be credited to the Roscoes.

### V. THE CURRENT FRAUD GUIDELINES AND CUMULATIVE ENHANCEMENTS ROUTINELY AND UNJUSTLY RESULT IN DRACONIAN SENTENCING RANGES.

The PSR has calculated an advisory guideline range of 168 to 210 months, resulting from an adjusted offense level of 35 and Criminal History Category I.  The advisory guideline range should not be heeded because it is the product of unwarranted reliance on a "loss" calculation as well as a multitude of cumulative enhancements for many closely related factors, which easily drive the guideline range to what a "rational jurist would consider to be a draconian sentence.  In United States v. Parris,  573 F. Supp. 2d 744, 750-51 (E.D.N.Y. 2008) the district court departed downward from an advisory guideline range of 360 months to life to a term of 60 months, noting that the guidelines in a securities fraud prosecution have run so amok they are patently absurd on their face.

The fraud guidelines have been criticized in law review articles, judicial opinions and even in U.S. Sentencing Commission studies.  In fiscal year 2010, sentences below the guideline range were imposed in 41% of all fraud cases; 18% were government-sponsored, 23% were non-government sponsored.  See U.S.S.C., *Preliminary Quarterly Data Report, Fourth Quarter FY 2010,* tbl 5.

 In "*Sentencing High-Loss Corporate Insider Frauds After Booker*", 20 Fed. Sentencing Reporter 167, (Feb. 2008), Profession Frank Bowman noted that "since Booker, virtually every judge faced with a  top-level corporate fraud defendant in a very large fraud has concluded that sentences called for  by the Guidelines were too high." id. at 169.  On top of the quickly escalating loss table, in any given case there are a multitude of cumulative enhancements for many closely related factors, which easily drive the guideline range to what a rational jurist would consider to be a draconian sentence.

The U.S. Sentencing Commission noted that "the fraud guideline has become the epitome

of "factor creep," where "more and more adjustments are added and it is increasingly difficult to ensure that the interactions among them, and their cumulative effect, properly track offense seriousness."[1]  With enhancements for multiple victims (§2B1.1(b)(2)), sophisticated means (§2B1.1(b)(9)),  organizers and supervisors (§3B1.1), effect on a financial institution (§2B1.1(b)(14)(B)), and  obstruction (§3C1.1), among others, fraud offenders are assured of a severe penalty under the guidelines. These enhancements replicate or overlap with each other and the concept of loss.

 In U.S. v. Lauersen, 362 F.3d 160 (2nd Cir. 2004), cert. granted, judgment vacated on other grounds  by Lauersen v. U.S., 543 U.S. 1097 (2005), the Second Circuit explained that overlapping enhancements in §2B1.1 particularly in cases involving higher loss amounts may merit a downward departure.

Perhaps even more critically, the guidelines confer undue weight to the loss amount.  In United States v. Emmenegger, 329 F. Supp. 2d 416, 427-28 (S.D.N.Y. 2004) the court noted that "the Guidelines place undue weight on the amount of loss involved in the fraud" which in many cases is "kind of an accident,"  and, accordingly, is "a relatively weak indicator of the moral seriousness of the offense or the need for deterrence."

The growing concern about the fraud guidelines is reflected in the Sentencing Commission's recent proposal to revisit the "loss table" in terms of the defendant's gain.  On January 19, 2012, the United States Sentencing Commission published in the Federal Register a request for comment on limiting the impact of the Loss Table if the defendant had relatively little gain relative to the loss.

> The Commission has observed that cases sentenced under §2B1.1 involving relatively large loss amounts have relatively high rates of below-range sentences (both government sponsored and non-government sponsored), particularly in the context of securities fraud and similar offenses.  The Commission has also received public comment and reviewed judicial opinions suggesting that the impact of the loss table or the victims table (or the combined impact of the loss table and the victims table) may overstates the culpability of certain offenders in such cases.

---

[1]U.S.S.C., *Fifteen Years of Guideline Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 50, 137 (2004)

Should the Commission insert a new specific offense characteristic in § 2B1.1 to limit the impact of the loss table in cases involving large loss amounts if the defendant had relatively little gain relative to the loss?

1.      If the defendant's gain resulting from the offense did not exceed $10,000, the adjustment from application of subsection (b)(1) shall not exceed 14/16 levels.

2.      If the defendant's gain resulting from the offense did not exceed $25,000, the adjustment from application of subsection (b)(1) shall not exceed 16/18 levels.

3.      If the defendant's gain resulting from the offense did not exceed $70,000, the adjustment from application of subsection (b)(1) shall not exceed 18/20 levels.

U.S.S.C, Proposed Amendments to the Sentencing Guidelines, Jan. 19, 2012. (Exhibit B).

Under the scenario proposed by the Sentencing Commission, Ned Roscoe's Advisory Guideline Range would start at level 21 (i.e. base offense 7 plus 14 for "loss"), rather than the level 27 contained in the Presentence Report.  Including the two level enhancement conceded for "leadership role," the advisory guideline range would be level 23 rather than the level 35 contained in the Presentence Report.

## VI. RELEVANT SENTENCING FACTORS

The Court must consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 3553. In assessing the "3553(a) factors," this court should consider Ned Roscoe's age, his lack of criminal record for over fifty years, his devotion to his family, and the circumstances of the offense.

### A.  First Offender Status

A study by the U.S.Sentencing Commission notes that the risk of recidivism by a first offender is very low, and courts have applied downward variances on first offenders under a 3553 analysis..

In United States v. Oldani, 2009 WL 1770116 (S.D. W.Va. June 16, 2009), Judge Chambers rejected guidelines applicable to importation of war munitions for night-vision devices. Oldani, at 13-17. Then the court went on to further reduce the resulting sentence based on the defendant's military service, service-related disability and hardships, and his post-offense

1   rehabilitative choices and conduct, predominantly his enrollment in a college degree program

2   and maintenance of high grades.  Judge Chambers recognized in Oldani the "low statistical

3   probability of recidivism for 'true first offenders,' with no prior criminal convictions or arrests."

4   Id. at 19-20.

5         In United States v. Huckins, 529 F.3d 1312 (10th Cir., 2008), the court imposed a

6   sentence of 18 months for a defendant convicted of possession of child pornography of the

7   advisory guideline range of 78-97 months.  The court found that a variance below Criminal

8   History Category I was warranted in its § 3553(a) analysis based on a defendant's lack of a

9   criminal record.  Id.

10        In United States v. Autery, 555  F.3d 864, (9th Cir. 2009), the district court found that the

11  defendant's Criminal History I category did not fully account for his complete lack of a criminal

12  record.  The district court imposed a five year term of probation with conditions for Autrey's

13  conviction for possession of child pornography.  In upholding the sentence as reasonable, the

14  Ninth Circuit cited United States v. Rowan, 530 F.3d 379, 381 (5th Cir.2008) which held that

15  probation was reasonable for a defendant convicted of possessing hundreds of hardcore child

16  pornography images where defendant had no criminal history.  Autery, at 874.

17
18                    **B.  Ned Roscoe Was Not Motivated by Greed,**
                    **but by a Desire to Keep the Family Business**
19                    **Running.**

20        A defendant's motive is highly relevant at sentencing.  In United States v. Milne, 384  F.

21  Supp. 2d 1309, 1310-11 (E.D. Wis. 2005) the court granted a variance where "defendant did not

22  take the bank's money out of greed or a desire to live a lavish lifestyle, [but in effort] to  keep a

23  sinking business afloat." In United States v. Ranum, 353 F. Supp. 2d 984, 990 (E.D.  Wis. 2005)

24  the court noted that the defendant did "not act for personal gain or for improper personal gain of

25  another."

26        This case was all about saving the family business.  CC! told the bank repeatedly that the

27  best way to make profits was to free up funds to buy more product to sell.  CC! voluntarily

28  brought the restatement to the Bank's attention in November 2003.  Despite the significant

"over-advance," Comerica did not call the loan, but continued to work with the Roscoes and Cigarettes Cheaper! to wind down the business.    Many of the stores were sold.  At some point, the remaining tobacco inventory was destroyed, and the excise tax refund was turned over to the bank.   Ned Roscoe's main asset, the house at Wild Horse Valley road, was sold, and the proceeds given to the bank.  The Roscoes have sold most, if not all, of the assets originally pledged as collateral against the loan and those proceeds have been turned over to the bank. Some of the properties went to foreclosure because the bank would not free up the funds to make the necessary payments.

## VII.  CONCLUSION

For the reasons set forth above, this court should find that a variance is necessary to do justice in this case, and a sentence of forty-six months is sufficient to comply with the purposes of sentencing.

Dated: February 6, 2012                          Respectfully submitted,


                                                   /s/   Vicki H. Young
                                                 Vicki H. Young
                                                 Attorney for NED ROSCOE